This is the second appeal of this case. The cause was first instituted in the circuit court of Phelps county, returnable to the December term, 1931. On the 12th day of December, 1932, the cause went to trial, resulting in the plaintiff taking an involuntary nonsuit at the conclusion of all of the evidence, as to the defendants M. E. Gillioz and Rolla National Building Company, a corporation. Judgment was taken by the plaintiff against J. B. McCarry Company for the sum of $4,980.65. Said cause, on appeal by the plaintiff, was reversed and remanded, and is reported in Harry Cooper Supply Co. v. Rolla Nat Bldg. Co. (Mo.App.)66 S.W.(2d) 591.
On the second trial of this cause, plaintiff filed its amended petition, upon which the cause was tried and M. E. Gillioz filed separate amended answer. The jury returned a verdict for the plaintiff in the sum of $4,560.34. Defendant Gillioz filed his motion for new trial, which was by the court overruled, and the cause is again before us on appeal by defendant Gillioz.
On the first appeal in this case [66 S.W. (2d) 591] this court held, and we think settled the issue, that the facts made a case for the jury. The jury passed on the facts and awarded respondent a verdict, that it have a lien for the enforcement of its judgment against the defendant J. B. McCarty Company to the extent of $4,560.34, being the principal amount of the balance due on respondent's account against the defendant J. B. McCarty.
The testimony in the case, now before us, is to the effect that the Harry Cooper Supply Company, of Springfield, was in 1930 and 1931 in the wholesale plumbing business; that the J. B. McCarty Company was a corporation in the plumbing contracting business, with headquarters in Springfield; that the defendant M. E. Gillioz was in the general contracting business; and that the Rolla National Building Company was a corporation of Rolla, Mo., and the owner of the premises involved. That the latter company, in 1930, made a contract with M. E. Gillioz for the erection of a hotel known as the Edwin Long Hotel, at Rolla, upon the premises described in plaintiff's petition, and in its lien account; that M. E. Gillioz sublet the plumbing and heating for the hotel building to the defendant McCarty, who in turn purchased his supplies on a running account for the building from the plaintiff, Cooper Supply Company. That the hotel was opened for business on March 12, 1931, but was not completed or accepted as complete at that time; that the architects employed by the owner to manage and supervise the construction made numerous requirements then and thereafter of the contractor and various subcontractors on the job, and in particular of the defendant J. B. McCarty Company. That pursuant to these requirements and in order to complete its contract, the J. B. McCarty Company did additional work on the hotel on May 12, 13, and 14, 1931, and at that time reset and completed the installation of various equipment to the hotel and installed equipment sold to the McCarty Company for use on the hotel by the plaintiff, Cooper Supply Company, including a number of brass plugs, china bolt caps, and radiator pedestals.
The evidence further shows, and it is undisputed, that pursuant to due notice, given and received, respondent filed its lien statement in the office of the circuit clerk of Phelps county, on September 5, 1931, and within four months after its account accrued against the building and premises. The lien account filed by respondent was fully itemized, setting out in minute detail the articles sold and used in the building and contained in the second count, and the dates that said articles were sold and delivered, showing a great number of articles with the price of each article separately set forth, and constituting a total charge of $15,527.09, against which there were credits of something over $10,000; over $9,000 of which were cash credits, leaving the principal balance due of $4,560.34. This lien statement preceding the itemization of the account, set out "that the last item of said materials *Page 801 
so furnished and sold and delivered and used in said improvement, erections and buildings, were shipped on the 7th day of May, 1931, and thereafter used in and about said construction work." And following the itemizations, further set forth: "That the demand accrued within less than four months prior to the date of the filing of this lien." Such, under the law of this state, is equivalent to the statement that the last item of materials used in the building was installed therein within four months preceding the filing of the lien account.
The record further discloses that at the prior trial of this case, final judgment was rendered against the defendant J. B. McCarty Company, and in favor of plaintiff, for an amount larger than the present verdict, sustaining a lien, which included the interest; that this is the appeal of the defendant M. E. Gillioz, who, in addition to being a general contractor, holds a note secured by deed of trust on the premises for a large amount.
It is true the record discloses that all the items contained in the invoice of May 7th were not used in the building in question, and also shows a number of items of tools, insignificant in comparison to the whole account, were included in the account, but as above stated, discloses that there were cash credits, which paid for all of such items, so that they are not a part of the balance for which a lien is sought. The evidence further discloses, as to the invoice of May 7th, that so far as plaintiff knew, and until long after the lien was filed, the items contained in the May 7th invoice were bought for and used in the hotel, and that this fact was never questioned until long after the lien account was filed, though statements and demands for payment, containing the items, had been sent from month to month to the defendant J. B. McCarty Company. Preceding the last trial, plaintiff filed an amended petition, specifically giving credit to the defendants for one item of $311.84 being credit memorandum for returned merchandise and for $82.49, being a credit memorandum for a freight allowance on a boiler, which credits did not appear on the mechanic's lien statement.
The testimony was that a separate account and ledger was kept on the Edwin Long Hotel job in question; that McCarty had a number of other large jobs he was building, and for which the plaintiff was selling him equipment, most of these other jobs being kept in one general ledger account. That at the time these credit memorandums were issued, credit was given to J. B. McCarty Company, and that, through mistake, they were credited to the general ledger account, instead of the account in issue, and that this was not discovered until long after the lien was filed and the suit was filed, the memorandums having been filed away; that they were discovered at a later time, when the general account was being checked over, and then immediately transferred and credited to the proper account, the account in issue having been so credited prior to the first trial of this case. The record of the first trial contained a great deal of oral testimony about the $311 credit, whereas the $82 credit had not been singled out, but it was shown in evidence it had been credited prior to the first trial, and the balance due and asked for at the first trial, and the balance stated due and asked for at the last trial was the same.
[1] Appellant contends that under the evidence in this case, by the testimony of witness J. B. McCarty, he was entitled to have submitted to the jury the question of whether or not the McCarty Company made payments to the Cooper Supply Company sufficient to discharge this account, with directions that such payments be applied on this account. From a reading of this testimony we think it would not be ascertained as to what payments he directed the application of or as to in what instance he even informed the Cooper Supply Company he was getting money from the appellant, Gillioz. Such being true, there was no submissible issue made, and in fact his testimony nullified itself and was of no legal effect.
[2-4] This court, in its previous decision (66 S.W.(2d) 591, 594), held: "It is true that several items appeared in appellant's account that of themselves would not be lienable. However, it is, we think, properly urged by appellant that payments made on the whole account in the total amount credited, of more than $10,000 applied first to unsecured or nonlienable items and next to the oldest items of the account when so applied, fully satisfied the items questioned by respondents, and left only unquestioned and unquestionably lienable items in the statement."
The evidence on the second appeal was no different as to these payments and credits than on the first, and it is still *Page 802 
unquestionable that the balance asked for is for lienable items; unquestionable that no issue of fact was made on that score. This court, in its prior decision, settled the law as to that with this language: "It is our opinion that the nonlienable items in this account, denominated unsecured items, are the items to which the payments made before the lien statement was filed, should be credited, and if they were so paid, though they are set out in the lien statement, they are balanced by the payments made if sufficient, which is the result in this case."
The same contentions were made relative to credits in the former appeal that are made on this appeal and we think the former opinion also settled the law as to them, and there being no favorable evidence to appellant, this ceased to be a question of fact in this case. This court, in the former opinion said: "It is urged by respondents that the lien statement filed by appellant was not a just and true account of the demand due after all just credits had been given, as required by section 3161, R.S.1929 [Mo.St.Ann. § 3161, p. 4986]. To this contention we cannot agree. The entire account charged by appellant in the course of the whole transaction amounted to $15,527.09, upon which there' was credited the total sum of $10,769.06, which more than paid all nonlienable items, leaving a balance due of $4,758.03, for items clearly lienable."
[5, 6] We think the late case of Moller-Vandenboom Lumber Company v. Boudreau (Mo.App.) 85 S.W.(2d) 141, as to what constitutes a correct andtrue account, is directly in point in this case, and in accord with our holding upon same, in our previous opinion. In this case at loc. cit. 148 the court said:
"In Schroeter Bros. Hardware Co. v. Croatian `Sokol' G. Ass'n,332 Mo. 440, 58 S.W.(2d) 995, loc. cit. 1000, the requisites of a lien account are held to be as follows: `The lien account contemplated by the law "is such a statement of the claim as fairly apprises the owner and the public of the nature and amount of the demand asserted as a lien."' State ex rel. O'Malley v. Reynolds, 266 Mo. 595, 182 S.W. 743, 745; Banner Lumber Co. v. Robson, 182 Mo.App. 611, 168 S.W. 244; Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, 40 S.W. 118, 60 Am.St.Rep. 544.
"The affidavit clearly shows that plaintiff corporation was the owner of the lumber sold and delivered to Holmes, and was seeking the lien therefor and not `Canton Lumber Company,' in whose name the account was made out. And such affidavit may properly be considered in explaining and clarifying the account and in determining its sufficiency. Mitchell Planing-Mill Co. v. Allison, 138 Mo. 50, loc. cit. 56, 40 S.W. 118,60 Am.St.Rep. 544; Kneisley Lumber Co. v. Edward B. Stoddard Co.,113 Mo.App. 306, loc. cit. 316, 88 S.W. 774.
"We conclude that the lien account, which we have set out heretofore, meets the acid test prescribed, and fully apprises the owner and the public of the nature and amount of plaintiff's demand and of its desire and purpose to have it established as a lien on certain described buildings located, on certain described premises.
"Defendant contends that the lien account is not a just and true one, on the ground that some of the items listed in the last two deliveries were not lienable because they were not used in the construction of the buildings. The trial court did find that there were some items in the last delivery of July 8, 1932, amounting to $80.16, being 334 pieces of shiplap, contained in the lien account which were not used in the construction of the buildings and they were excluded. However, in the absence of any showing of fraud or bad faith and where the nonlienable items are separable from the balance of the account and their inclusion is through inadvertence, or is the result of an honest mistake and no one has been injured or misled thereby, it is ruled that such inclusion does not invalidate the entire lien: Schroeter Bros. Hardware Co. v. Croatian `Sokol' G. Ass'n, 332 Mo. 440, 58 S.W.(2d) 995, loc. cit. 1000; Harry Cooper Supply Co. v. Rolla National Bldg. Co. (Mo.App.)66 S.W.(2d) 591; Allen Co. v. Frumet Mining Smelting Co., 73 Mo. 688, loc. cit. 693."
[7,8] The evidence as to the accrual of the indebtedness and the time the lien was filed was identical to the evidence in the first trial. If there was any change, it was only to make it more conclusive that the materials sold by appellant were used and installed in the premises within four months preceding the filing of the lien. The question as to when an account accrues, within the meaning of the Mechanic's Lien Act, is a question of when the material was finally installed in the premises. It may be put in taken out and reinstalled *Page 803 
or moved around, and as set out, the time the account accrues is when it is finally installed. The prior opinion of this court, in this case, settled this point, and as ground therefor cited the cases of Benning v. Farmers' Bank of Odessa (Mo.App.) 190 S.W. 983; United States Water Co. v. Sunny Slope Realty Co., 152 Mo.App. 300, 133 S.W. 371. Appellant, in this connection with this matter, took the same position before that it takes now, that is, that respondent can only recover on showing that the items contained in the invoice of May 7th went into the building; and, second, that the items which were installed (bolt caps, radiator pedestals and brass plugs) on May 12th, 13th, and 14th were not sufficient to bring the filing of the lien within time. This court previously ruled to the contrary upon this matter, and the evidence in the second trial being substantially the same as that of the first trial, upon this matter, ourprevious ruling will not be disturbed. Ward v. Haren, 183 Mo.App. 569, loc. cit. 580, 167 S.W. 1064; Gracey v. St. Louis, 221 Mo. 1, loc. cit. 5, 119 S. W. 949; Benton v. St. Louis,248 Mo. 98. 154 S.W. 473; Keeton v. National Union (Mo.App.) 182 S.W. 798.
[9-11] Therefore, it is our opinion that the only thing to be considered by us in the case now before us is whether or not there was any error in the trial court Appellant makes a number of assignments of error, and specifically complains of respondent's instruction No. 1.
Instruction No. 1 required the jury to find that the "materials mentioned in evidence herein were sold by plaintiff to J. B. McCarty Company." Next, the jury was required to further find that the materials were not only sold to the J. B. McCarty Company, but were sold to that company for use in the improvements in question and then were further required to find that the materials "were used in the building and improvements upon the premises in evidence herein." The materials referred to were the materials set out in the lien statement, set out in minute detail, each item being separately stated, with a separate charge therefor. The jury was required to find that all of the materials, the price for which a lien was asked, were sold for use and actually used in the building. If the jury so found, as it was required to do, in order to return a verdict, by this instruction, then the account setting out these materials that the jury was so required to find were sold foruse and used in the building, was necessarily such a lien statement and account as is contemplated by the statute. The jury, in this instruction, was further told that, in returning a verdict, they would find in the amount they found to be due and unpaid to the plaintiff, for the reasonable price and value of the materials as were placed and usedin said building and improvements. While it is true that this instruction did not, in so many words, follow the language of the statute and say that the jury must find that the account was a "just and true account," but it did require them to find the facts, which, if true, necessarily constituted the accounts as being such a lien statement as the statute contemplates, and can not be said to assume anything to the contrary.
We think the evidence, considered as a whole, discloses that the materials used in this case were furnished for and used in the building, on the premises in question, and that they were sold to be used in said building; and were sold upon the faith and credit that they were to be used in this particular building; and not sold merely as a general sale, without any specific purpose or reason.
Appellant's attack upon the respondent's instruction No. 1 is based upon the premise that it was necessary for the plaintiff to require the jury to find that the lien account filed was such an account as was contemplated by the statute. We hold that plaintiff's (respondent's) instruction No. 1 did so require the jury to find, and that if the jury found the facts predicated in respondent's instruction No. 1, that it found a substantial compliance on the part of respondent, with the statutes of Missouri, regarding mechanic's liens. Appellant pleaded as a defense and based its defense upon the contention that the lien account was not a just and true account, and sets out the failure of plaintiff to give credit for two items charged in the account, one in the sum of $311 and one in the sum of $82. The record of the first trial contained a great deal of oral testimony about the $311 credit, whereas the $82 credit had not then been singled out, but it was shown in evidence it had been credited prior to the first trial, and the balance stated due and asked for at the first trial was the same as at the last trial. The $311 item was fully submitted to the jury in appellant's instruction D. If there was any question as to the $82 *Page 804 
item and the appellant was relying on it as a defense to the correctness of the lien statement, it was the duty of the appellant to ask an instruction thereon, and having failed to do so, he cannot now be heard to complain. The situation in this case is not comparable to a situation which arises when a plaintiff omits from his main instruction, directing a verdict, an element prerequisite to his recovery, but the authorities are legion that if the plaintiff omits from his main instruction, directing a verdict, an element of defense and this element of defense is fully covered in defendant's instructions, then any error in the plaintiff's instruction is cured thereby. Tuttle v. Chostner (Mo.App.)260 S.W. 819.
[12] Notice of the intention to file mechanic's lien was properly served upon the owner of the building, and the question was submitted to the jury in instruction No. 1. The owner of the building is not making complaint, nor does Mr. Gillioz complain in any way about the serving of the notice upon himself. The purpose of such a notice is to give the property owner an opportunity to see that the debt is discharged before the lien is filed, and for his benefit alone, and he alone could complain of its failure to be properly served: Mr. Gillioz concedes that he was given that opportunity, and even if there had been no service on the Rolla National Building Company, it is doubtful if the appellantin this case could complain thereof.
We therefore hold that there was no error in plaintiffs (respondent's) instruction No. 1.
[13, 14] Appellant urges error on the part of respondent's instruction No. 2, in that it permits the jury to find in favor of the lien if the bolt caps and pedestals were installed in the building within four months of the filing of the lien account, irrespective of the circumstances or conditions causing the installation of said items.
The records of appellant's witness Maack, the architect for the owner, supervising the construction of the improvements and correspondence between him and appellant Gillioz and J. B. McCarty, show that the work was required as a condition precedent to the completion of McCarty's contract, show that he required the installation of the materials, which the undisputed evidence shows were installed on May 12th, 13th, and 14th, and witness Maack in his own testimony says that some pedestals and bolt caps were installed at that time. It is true that he at one place sought to state that the brass plugs had been put in earlier, but when he was questioned about that, it was found that he was talking about an altogether different set of brass plugs. The items of material, china bolt caps, radiator pedestals and brass plugs, installed on May 12, 13, and 14, 1931, were lienable items. Harry Cooper Supply Co. v. Rolla National Building Co., supra: McCarthy Lumber Const Co. v. Kinder, 206 Mo.App. 287, 225 S.W. 1024; St. Louis Radiator Mfg. Co. v. Carroll, 72 Mo.App. 315; Crane Company v. Epworth Hotel Const. Real Est. Co., 121 Mo.App. 209, 98 S.W. 795; General Fire Extinguisher Co. v. Farmers' Elev. Co., 165 Mo. 171, loc. cit. 182, 183-185, 65 S.W. 318.
We therefore hold that there was no error in respondent's instruction No. 2.
[15] Appellant further urges error in respondent's instruction No. 3. Respondent's instruction No. 3 was the converse of appellant's instruction D, and simply more fully submitted this question to the jury, and we find no error therein.
It is our opinion that under the record in this cause, there was no error in the trial court, that the case was fairly tried, and the verdict was for the right party.
The judgment of the trial court is therefore affirmed.
SMITH and FULBRIGHT, JJ., concur.
 *Page 1098